UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANE E. WOODSON,<br><br>  Plaintiff,<br><br>v.<br><br>T. CARRANZA, J. CASARES, LOPEZ, R. YBARRA, R. DIN,<br><br>  Defendants. | Case No.: 3:22-cv-1549-JO-JLB<br><br>**ORDER: (1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND (2) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)** |

Plaintiff Dane Woodson is currently incarcerated at Centinela State Prison (CEN) in Imperial, California. Proceeding *pro se*, he filed a civil rights action pursuant to 42 U.S.C. § 1983, along with a motion for leave to proceed *in forma pauperis* (IFP). ECF Nos. 1, 2. For the reasons discussed below, the Court grants Plaintiff's IFP motion but dismisses his Complaint with leave to amend.

# I.

# MOTION TO PROCEED IFP

A party may initiate a civil action without prepaying the required filing fee if the Court grants leave to proceed IFP based on indigency. 28 U.S.C. § 1915(a); *Andrews v.*

*Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). To proceed IFP, plaintiffs must establish their inability to pay by filing an affidavit regarding their income and assets. *See Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015). Prisoners seeking to establish an inability to pay must also submit a "certified copy of the [prisoner's] trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). Prisoners who proceed IFP must repay the entire fee in installments regardless of whether their action is ultimately dismissed. 28 U.S.C. § 1915(b)(2); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016).

In support of his IFP Motion, Plaintiff has submitted a copy of his trust account statement as well as an official certificate from a prison official verifying the accuracy of his account statement. *See* ECF No. 3 at 1, 3. These statements show Plaintiff maintained an average monthly balance of $48.52 and had $41.67 in average monthly deposits credited to his account over the 6-month period immediately preceding the filing of his Complaint. *Id.* at 1. His available balance at the time of filing was $0.28. ECF No. 3 at 3. The Court finds Plaintiff has established an inability to pay the required $350 filing fee and GRANTS Plaintiff's IFP Motion. While the Court will not assess an initial payment, Plaintiff will be required to pay the full $350 filing fee in installments which will be collected from his trust account as set forth in 28 U.S.C. § 1915(b)(2).

## II.

### SCREENING PURSUANT TO 28 U.S.C. § 1915(e) AND § 1915A(b)

#### A.  Legal Standards

Pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b), the Court must screen a prisoner's IFP complaint and *sua sponte* dismiss it to the extent that it is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (*en banc*); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). "The standard for determining whether Plaintiff has

failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires that a complaint "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id*.; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

To state a claim under 42 U.S.C. § 1983, Plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

### B.  Plaintiff's Allegations

When Woodson arrived at Centinela Prison on May 25, 2021, Correctional Officers Carranza and Casares housed him in a section of the facility designated for inmates who were considered "program failures." ECF No. 1 at 4. Plaintiff alleges that Carranza and Casares housed him in this section without taking him before a classification committee to be screened for an appropriate assignment. *Id*. As a result, Woodson was incorrectly assigned to share a cell with Lawton, an inmate with a "C-status" designation due to repeated rule violations, including some for possessing alcohol. *Id*.

After these officers initially placed him with Lawton, Plaintiff tried to change his housing assignment. On May 27, 2021, Woodson approached Correctional Officer Lopez, who controlled all the "bed moves." *Id*. at 5. Plaintiff informed Officer Lopez that he had been improperly housed with "C-status" inmates (those with frequent rule violations whose privileges are restricted) without a classification committee hearing. Plaintiff requested a

move, noting that he had just been transferred for "good behavior" and thus should be assigned to a cellmate with a lower-level security classification. *Id.* at 4, 5. Lopez refused. *Id.* at 5. When Plaintiff repeated his request to be moved to a different cell, Lopez responded, "So you're reusing a direct order? That's a 115 and trip back to C-Yard. . . You got two options, lock it up or get a write up." *Id.* Woodson did not pursue the matter further because he feared discipline. *Id.*

About two months after arriving at Centinela, Plaintiff alleges that he was falsely written up for possessing alcohol. On July 23, 2021, Correctional Officer Ybarra conducted a search of the cell occupied by Plaintiff and Lawton. *Id.* at 6. During this search, Officer Ybarra found alcohol in the cell. Woodson asserted that the alcohol belonged to his cellmate but Officer Ybarra informed Woodson that he would be written up. When Plaintiff requested a cell search receipt, Ybarra refused and, instead, told Woodson he would get a second write-up if he continued to complain. *Id.*

Centinela proceeded with a disciplinary hearing against Plaintiff based on his alleged alcohol possession. On August 5, 2021, Plaintiff was served with a Rule Violation Report (RVR) prepared by Ybarra, accusing him of possessing alcohol. *Id.* After receiving the RVR notifying him of the disciplinary charges, Woodson asked for an Investigative Employee (IE) to assist him at his upcoming disciplinary hearing. He also requested that Ybarra and Lawton be present at the hearing as witnesses. *Id.* The RVR hearing was held on August 8, 2021, despite Woodson's request that the hearing be postponed until he could get an IE to assist him. *Id.* Neither of Woodson's requested witnesses were present at the hearing. When Woodson asked about the missing witnesses, Officer Din, the hearing officer, ignored him and stated, "I'm finding you guilty." *Id.* at 7. In addition, Woodson claims Officer Din falsely reported that Woodson had admitted to knowing there was alcohol in his cell, and that Woodson had withdrawn his request for witnesses. *Id.* At the conclusion of this hearing, Officer Din found Woodson guilty. *Id.* As a result, Woodson states he has been improperly deprived of the ability to participate in "rehabilitative

programs" offered by Centinela. ECF No. 1-3 at 2.

## C.  Analysis

### 1.  *Woodson Fails to Allege an Eighth Amendment Violation*

Based on the above facts, Woodson claims Carranza and Casares violated his Eighth Amendment rights when they improperly assigned him to share a cell with Lawton, who was a "program failure." ECF No. 1 at 5. Woodson further alleges that Lopez also violated this right when he ignored Plaintiff's complaints about this assignment and, instead, threatened to write him up. *Id.* at 6.

The Eighth Amendment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see also Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). A prisoner claiming an Eighth Amendment violation must allege facts to plausibly show: (1) the deprivation he suffered was "objectively, sufficiently serious;" and (2) that prison officials acted with deliberate indifference to a serious risk to his health or safety in allowing that deprivation to take place. *Farmer*, 511 U.S. at 834. A housing assignment may be "restrictive and even harsh," but does not violate the Eighth Amendment unless it "either inflicts unnecessary or wanton pain or is grossly disproportionate to the severity of crimes warranting imprisonment." *Rhodes*, 452 U.S. at 348–49. While prison officials must ensure inmates are not deprived of adequate shelter, food, sanitation, medical care, or personal safety, *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000), there is no Eighth Amendment right to a desirable or compatible cellmate. *See Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) ("[N]ot every injury that a prisoner sustains while in prison represents a constitutional violation."); *see also Allen v. Figueroa*, 56 F.3d 70, *7 (9th Cir. 1995) (unpublished disposition) (concluding prisoner had no Eighth Amendment or Due Process right to be housed with an inmate of his choice).

Here, nothing in Woodson's Complaint plausibly supports his contention that the placement he complains of constituted an "objectively, sufficiently serious" deprivation

under the Eighth Amendment. For example, Plaintiff fails to allege any facts which would plausibly suggest Lopez's refusal to re-assign him presented a serious risk to his health or safety. Plaintiff does not allege he lacked basic necessities nor that the conditions of his assignment inflicted pain or injury. Neither does he suggest that Plaintiff's cellmate posed a physical risk to his well-being nor that his health or safety were compromised by this cell assignment in any other way. While Woodson argues officers intended to prolong his detention by placing him with a known troublemaker, these allegations are not sufficient to establish that he suffered a serious deprivation under the Eighth Amendment. The Court therefore concludes Woodson has failed to state an Eighth Amendment claim against Carranza, Casares, or Lopez.

### 2. *Woodson Fails to Allege a Due Process Violation*

The Court next turns to Plaintiff's claims that Defendants violated his due process rights when (1) Officer Ybarra falsely accused him of alcohol possession (ECF No. 1 at 6) and (2) Officer Din found him guilty of this charge without granting him due process during the hearing. *Id.* at 6–7.

A prisoner is entitled to procedural due process protections, such as the right to call witnesses, only when protected liberty interests are at stake during the prison disciplinary hearing. *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003). To establish that a disciplinary hearing implicates a liberty interest protected by the Due Process Clause, a prisoner must allege that it resulted in "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Because there is "no single standard for determining whether a prison hardship is atypical and significant," analysis "requires case by case, fact by fact consideration." *Chappell v. Mandeville*, 706 F.3d 1052, 1064 (9th Cir. 2013). In doing so, courts may consider, among other things, "(1) whether the conditions of confinement 'mirrored those conditions imposed upon inmates in analogous discretionary confinement settings, namely administrative segregation and protective custody,' (2) the duration and intensity of the

conditions of confinement; and (3) whether the change in confinement would 'inevitably affect the duration of [the prisoner's] sentence.'" *Id.* at 1064–65 (quoting *Sandin*, 515 U.S. at 486–87). If a liberty interest is not implicated, a prisoner is only granted minimum due process which requires only that the outcome be "supported by some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454–55 (1985).

Here, Woodson has failed to adequately allege that his guilty finding by Officer Din deprived him of a protected liberty interest; he, therefore, cannot establish that he was entitled to due process. Woodson fails to include specific facts describing the punishment he purportedly received because Officer Din found him guilty of alcohol possession, alleging only that he was deprived access to unspecified "rehabilitative programs" offered at Centinela. *See* ECF No. 1-3, Pl.'s Decl. at 2. The Court, therefore, cannot assess whether the punishment involved a longer sentence or the imposition of significant hardships that are dramatically different from ordinary prison conditions such that a liberty interest is implicated. Because Plaintiff has failed to allege that a liberty interest was at stake during his hearing, he has failed to establish that he was entitled to procedural due process protections during and leading up to his disciplinary hearing. *See Sandin*, 515 U.S. at 486. Accordingly, he fails to state a due process claim against Officer Din.

Even if Plaintiff had alleged a protected liberty interest, he could not state a valid due process claim on the grounds that Ybarra falsely accused him of alcohol possession. Inmates do not have a due process right to be free from false disciplinary charges. *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) (inmates have "no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest"); *Johnson v. Felker*, No. 1:12-cv-02719-GEB-KJN-P, 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a [rules violation] report does not give rise to a claim under section 1983."). Plaintiff's only claim against Ybarra is the falsification of charges against him and

that does not suffice to state a cognizable due process claim.[1]

For the above reasons, the Court dismisses Plaintiff's complaint against all Defendants. Because Plaintiff is proceeding pro se, the Court grants him leave to amend to attempt to sufficiently allege a claim if he can. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (internal quote marks omitted).

### III.
### CONCLUSION AND ORDER

For the reasons set forth above, the Court hereby:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2. **ORDERS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $ 10 in accordance with 28 U.S.C. § 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, by U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

---

[1] Because Plaintiff has failed to allege a protected liberty interest, the Court need not address whether he was denied due process protections during this disciplinary hearing.

4. **DISMISSES** the Complaint without prejudice and with leave to amend pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

5. **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file a First Amended Complaint which cures the deficiencies of pleading noted in this Order. Plaintiff's First Amended Complaint must be complete by itself without reference to any previous version of his pleading; Defendants not named and any claims not re-alleged in the First Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled"). If Plaintiff fails to timely amend, the Court will enter a final Order dismissing this civil action. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated: March 28, 2023

Hon. Jinsook Ohta
United States District Judge